FACTS AND PROCEDURAL HISTORY
LEE, C.J.,
for the Court:
¶ 1. On July 14, 2011, officers from the Jackson Police Department responded to the home of Minnie Jacobs. Jacobs’s daughter, Victoria Jacobs-Branson (“Bran-son”), had come to the home in the middle of the night exhibiting troubling and erratic behavior. She had damaged Jacobs’s home and had broken several windows. Also, Branson’s sister, Kathy Levy, believed that Branson had tried to bury her children. The officers found Branson and her two minor sons, eight-year-old Caleb[1] and seven-year-old Kevin, hiding in a planter’s box in a neighbor’s carport. Instead of being taken into police custody, Branson was admitted to St. Dominic Hospital for psychiatric treatment. The officers placed Caleb and Kevin with Levy and filed a report with the Mississippi Department of Human Services (DHS).
¶ 2. On April 3, 2012, an adjudication hearing was held in Hinds County Youth Court. The court found that Caleb and Kevin were neglected children under Mississippi Code Annotated section 43-21-105(Z) (Supp.2013). The court ordered the children’s care and custody to remain with DHS for appropriate placement, and for both children to receive counseling until they are released.
STANDARD OF REVIEW
¶ 3. “The standard of review for [a youth court judgment] is the same as that of a chancellor^] whether the ruling was manifestly wrong [or] clearly erroneous, or [the court] applied an erroneous legal standard.” In re B.S., 105 So.3d 1120, 1121-22 (¶ 6) (Miss.2013) (internal quotations omitted).
DISCUSSION
¶ 4. Branson argues on appeal that there was no evidence to support the youth court’s determination that Caleb and Kevin were neglected under section 43-21-105(Z). Section 43-21-105(Z) defines a neglected child as one:
(i) Whose parent, guardian or custodian or any person responsible for his care or support, neglects or refuses, when able so to do, to provide for him proper and necessary care or support, or education as required by law, or medical, surgical, or other care necessary for his well-being; however, a parent who withholds medical treatment from any child who in good faith is under treatment by spiritual means alone through prayer in accordance with the tenets and practices of a recognized church or religious denomination by a duly accredited practitioner thereof shall not, for that reason alone, be considered to be neglectful under any provision of this chapter; or
(ii) Who is otherwise without proper care, custody, supervision or support; or
(iii) Who, for any reason, lacks the special care made necessary for him by reason of his mental condition, whether the mental condition is having mental illness or having an intellectual disability; or
(iv) Who, for any reason, lacks the care necessary for his health, morals or well-being.
¶ 5. At the adjudication hearing, Sharon Douglas, a family-protection specialist with DHS, testified that during her interview with Caleb, he stated that while walk *462 ing to Jacobs’s house in the middle of the night, Branson had put him headfirst into a garbage can and pushed him in the garbage can. Caleb also stated than Bran-son did not feed him, and he indicated that she had hurt him but would not elaborate any further. During Douglas’s interview with Kevin, he stated that Caleb was put into a garbage can because “he was dirty.” Kevin also stated that Branson had “put a knife to [Kevin’s] neck.” Kevin told Douglas that Branson made him lie in a hole in the backyard to bury him, although she never covered him with dirt. Kevin disclosed the burying incident during his forensic evaluation at the Children’s Advocacy Center.
¶ 6. Additionally, Douglas spoke to Branson. Branson admitted to threatening Kevin with a knife, which she already had in her hand because she was in the kitchen cooking. When Douglas spoke to Levy, she explained that Branson had an extensive history involving similar incidents in the past and had been hospitalized many times before. Branson has a histoiy of bipolar disorder, and at the time of the incident, she was believed to be off her medication.
¶ 7. Branson testified at the hearing. She stated that she pushed Caleb down the street in a neighbor’s wheelbarrow— not a trash can. She also claimed that she did not attempt to bury Kevin alive. Instead, she stated that she and Kevin had lain in the backyard and looked up at the stars. Additionally, she denied ever admitting to Douglas that she threatened Kevin with a knife. Branson also testified that she had been diagnosed as bipolar. While she had been prescribed anxiety medication, she had not taken it in three weeks.
¶ 8. From the record, it is clear that the youth court found Douglas to be a more credible witness. There is nothing in the record to show that the court was manifestly wrong or clearly erroneous, or applied an erroneous legal standard. This issue is without merit.
¶ 9. THE JUDGMENT OF THE HINDS COUNTY YOUTH COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. The names of the children have been changed to protect their identities.